**Virginia RODRIGUEZ, Appellant,**

v.

**TEXAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 08–87–00004–CV.

Court of Appeals of Texas, El Paso.

July 15, 1987.

Larry Myrick, Odessa, for appellant.

Nancy Oseashon, Asst. Co. Atty., Odessa, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

The Texas Department of Human Services sought and successfully obtained termination of Virginia Rodriguez' parental rights to her three children. The parental rights of the natural fathers were also terminated. Only the natural mother, Virginia Rodriguez, appeals. The judgment of the trial court granting termination is reversed, and judgment is hereby rendered.

On May 11, 1986, Virginia Rodriguez gave birth to a child who tested positive for opiates, resulting in the child suffering several days of withdrawal. This prompted the Texas Department of Human Services to intervene and obtain temporary custody not only of the newborn child, Bianca Rodriguez, but also Natalie Rodriguez, age fifteen months, and Jeremy Rubalcado, age 9. The natural mother entered into a written agreement whereby it was proposed that, if she complied with its terms, the children would be returned to her. At that time, she was held in custody by the authorities of Ector County, charged with a felony offense. It was anticipated by the Texas Department of Human Services that she would get probation, but instead she received fifteen years in the penitentiary, thereby triggering the filing by Appellee of a suit to terminate the mother's parental rights. It was admitted by Appellee at trial that Virginia Rodriguez in no way violated the terms of the agreement that instigated the filing of the termination suit. Appellant was brought back from prison for trial which occurred October 28, 1986, and ended with the trial court terminating Appellant's parental rights to all three children.

Point of Error No. One asserts that there was no clear and convincing evidence or, in the alternative, insufficient clear and convincing evidence justifying the trial court's termination of Appellant's parental rights to her three children.

Point of Error No. Two asserts that there was no clear and convincing evidence or, in the alternative, insufficient clear and convincing evidence justifying a finding by the trial court that it was in the best interest of the children that the parental rights of Appellant be terminated.

When considering a "no evidence" point, we can only consider the evidence and inferences which tend to support the findings of the trial court, and disregard all evidence and inferences to the contrary. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Also in considering the "no evidence" points, we must apply the "clear and convincing" evidence standard

which refers to "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *G.M. v. Texas Department of Human Resources*, 717 S.W.2d 185 (Tex. App.—Austin 1986, no writ).

The Texas Department of Human Services alleged two grounds for termination of parental rights under Tex.Fam.Code Ann. secs. 15.02(1)(D) and 15.02(1)(E) (Vernon 1986):

> Section 15.02(1)(D) [which provides for termination when the parent] knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; or

> Section 15.02(1)(E) [which provides for termination when the parent] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, . . . .

The trial court granted termination under Section 15.02(1)(D), but we must discuss both sections since the proof that was offered before the trial court related more closely to Section 15.02(1)(E) than Section 15.02(1)(D).

■ Termination of parental rights under Section 15.02(1)(E) requires a showing that the children have been placed in a physical environment dangerous to their physical and emotional well-being caused by the parent's conduct alone, as evidenced not only by their parent's acts but their own inactions. *In Interest of S.H.A.*, 728 S.W.2d 73 (Tex.App.—Dallas 1987, no writ).

■ Section 15.02(1)(D) refers only to the acceptability of the children's living conditions, and does not concern the conduct of the parents toward the children. *In the Interest of T.L.H.*, 630 S.W.2d 441 (Tex.App.—Corpus Christi 1982, writ dism'd). Parental conduct alone is not evidence to support termination under Section 15.02(1)(D). When such section refers to "conditions or surroundings," it requires a showing that the child has been placed in an environment dangerous to the child's physical or emotional well-being. *Stuart v. Tarrant County Child Welfare Unit*, 677 S.W.2d 273 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). There was no evidence offered before the trial court that the children were allowed to remain or be placed in an environment that was unhealthy or unsanitary, such as *In the Interest of S.H.A.*, supra; *B——J.——M—— v. Moore*, 582 S.W.2d 619 (Tex.App.—Dallas 1979, no writ); *Sanchez v. Texas Department of Human Resources*, 581 S.W.2d 260 (Tex.App.—Corpus Christi 1979, no writ.). The caseworker testified that Virginia Rodriguez' home was a two-bedroom house adequately furnished, well organized, clean and neat, and that she as a caseworker had no problem with the physical conditions in which the children were living in that home. She further admitted that the termination decision came about because the Appellant received a penitentiary sentence rather than probation. The Appellant was never called as a witness in the case.

The evidence before the trial court was that the newborn child, Bianca Rodriguez, was taken from the hospital after birth. Natalie Rodriguez was eighteen months old when a speech pathologist testified that Natalie suffered from developmental delay. The speech pathologist further testified that the test was given in English and that unfamiliarity with the English language could have affected the outcome of the test. Jeremy Rubalcado, age nine, had extensive absenteeism from school, but it was admitted that not all were unexcused absences. There was an instance where a one-time babysitter took her clothing top off in front of Jeremy. The caseworker agreed that this was an isolated and unpredictable occurrence. This was the extent of the evidence, except for the claim that the natural mother was an addict and had dealt in prostitution. There was no evidence as to the extent of addiction, the length of time she had taken drugs or the instances in regard to prostitution. A probation officer testified that the natural mother's reputation was bad, but he also testified that she had had no felony convictions.

Termination cases are strictly construed and scrutinized, and in cases of involuntary termination, statutes are strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18 (Tex.1985).

We find no clear and convincing evidence justifying the involuntary termination of the parental rights of Virginia Rodriguez under Section 15.02(1)(D) of Tex. Fam.Code Ann. (Vernon 1986). We therefore find that there was no clear and convincing evidence that the termination of the parental rights between Virginia Rodriguez and her three children was in the best interest of the children. Points of Error Nos. One and Two are sustained.

Point of Error No. Three asserts the trial court erred in interviewing the oldest child in chambers and in failing to make a record of such interview.

The Appellee urged the trial court to withhold making a decision in the case until the court could interview in chambers the oldest child of Virginia Rodriguez, nine-year-old Jeremy Rubalcado. Appellant duly objected that this was denying her the right to a fair trial, a violation of due process, and that she should be entitled to confrontation and cross-examination of the witness. Appellant urged the trial court that if an interview was to be done, it should be done in open court with the child placed under oath and the parties given their constitutional right to examine him. Appellant further insisted that a record be made. The trial court overruled the objection, interviewed the child in chambers without a record being made, and then returned to court and terminated the parental rights of the natural mother. Appellee urges that Title 2, Chapter 14, Section 14.-07(c) of Tex.Fam.Code Ann., provides that the trial court may interview a child in chambers when the issue of managing conservatorship is contested, that the court may allow attorneys to be present, and that if a child is twelve years or older, and a request is made, that the trial court shall make a record of the interview. It must be remembered that this provision of the Family Code is found under the chapter designated "Conservatorship, Possession and Support of Children."

Does Section 14.07(c) apply in termination cases? We hold that it does not because termination is governed by Title 2, Chapter 15, of Tex.Fam.Code Ann. (Vernon 1986), which is designated "Termination of Parent-Child Relationship." It makes no provision for in-chamber interviews as allowed by Section 14.07(c). The obvious distinction is that, under Chapter 14, some form of parent-child relationship remains in existence. Under Chapter 15, the parent-child relationship can be forever ended, which brings into play constitutional rights. *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex. 1976). We find that the trial court committed serious error interviewing the child in chambers. Point of Error No. Three is sustained.

Point of Error No. Four claims the trial court erred in denying Appellant's motion to dismiss. Appellant filed an unverified motion to dismiss challenging the authority of the caseworker, Juana Weisz, to file suit. Rule 93, Tex.R.Civ.P., requires that such a plea be verified, and therefore Point of Error No. Four is waived. Appellant's remaining complaints under this point of error are not briefed, and are also waived. Rule 74(f), Tex.R.App.P. *Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Point of Error No. Four is overruled.

Point of Error No. Five asserts that the trial court erred in denying Appellant's motion for continuance. Appellant filed a motion for continuance requesting postponement of the case, some seven months, until the natural mother returned for her first parole hearing in hopes of being released from prison. Such matter was purely speculative. There was no evidence offered in regard to this. Appellant cites no authority in his brief to support his position, and we find no evidence of abuse of discretion by the trial court in denying the motion for continuance. Point of Error No. Five is overruled.

The judgment of the trial court granting termination is reversed, and judgment is hereby rendered that termination of the parent-child relationship between Appellant and her three children be denied.